IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

EUGENE DIVISION

| | |
|---|---|
| TYLER D. BEUGLI, )<br>)<br>Plaintiff, )<br>) | 6:12-CV-01327-JO |
| v. )<br>) | |
| CAROLYN W. COLVIN, Acting Commissioner of )<br>Social Security, )<br>)<br>Defendant. ) | OPINION AND ORDER |

JONES, J.,

Plaintiff Tyler Beugli appeals the Commissioner's decision denying his concurrent applications for disability insurance benefits and supplemental security income under Titles II and XVI of the Social Security Act. The court has jurisdiction under 42 U.S.C. § 405(g). I AFFIRM the Commissioner's decision.

## PRIOR PROCEEDINGS

Beugli filed his applications in September 2009, initially alleging disability beginning in August 2008. Admin. R. 191. At his administrative hearing, however, it became clear that Beugli asserted disability beginning when he was struck by a motor vehicle while walking in August 2009.

1 - OPINION AND ORDER

Admin. R. 34-35. He alleged he could not work due to brain trauma, injuries to his right leg, and a life-long learning disability. He said he had poor reading and comprehension skills, difficulty understanding and carrying out instructions, and problems walking without an assistive device such as a cane or a walker. Admin. R. 196.

The ALJ applied the sequential disability determination process described in 20 C.F.R. sections 404.1520 and 416.920. *See Bowen v. Yuckert*, 482 U.S. 137, 140 (1987). The ALJ found that Beugli's ability to work was adversely affected by borderline intellectual functioning, a cognitive disorder, a learning disorder, residual effects of a right leg fracture, cannabis dependence, and alcohol abuse in claimed remission. Admin. R. 14. The ALJ found that, despite these impairments, Beugli retained the residual functional capacity ("RFC") to perform light work that is simple and routine and does not involve public contact, with additional restrictions on climbing, balancing, exposure to hazards, and postural activities such as crouching, crawling, and so forth. Admin. R. 17-18.

The vocational expert ("VE") testified that a person having Beugli's RFC and vocational factors could perform the activities required in light, unskilled occupations such as laundry sorter, bagger, and tableworker, representing hundreds of thousands of jobs in the national economy. Admin. R. 23, 70-71. The ALJ concluded that Beugli was not disabled. Admin. R. 23.

Several months after the ALJ's adverse determination, Beugli's attorney solicited an additional psychological evaluation, which was performed by John Cochran, Ph.D. Admin. R. 403-13. Beugli then requested review from the Appeals Council based on Dr. Cochran's report. The Appeals Council declined to review the ALJ's decision, but made Dr. Cochran's report a part of the

administrative record. Admin. R. 1-5. The ALJ's decision then became the final decision of the Commissioner. 20 C.F.R. §§ 404.981, 416.1481.

## STANDARD OF REVIEW

The district court must affirm the Commissioner's decision if it is based on proper legal standards and the findings of fact are supported by substantial evidence in the record as a whole. 42 U.S.C. § 405(g); *Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1193 (9th Cir. 2004). Under this standard, the Commissioner's factual findings must be upheld if supported by inferences reasonably drawn from the record even if evidence exists to support another rational interpretation. *Batson*, 359 F.3d at 1193; *Andrews v. Shalala*, 53 F.3d 1035, 1039-40 (9th Cir. 1995).

Beugli does not challenge the ALJ's evaluation of the evidence before him at the time of his decision. His appeal is based entirely on the post-decision evidence from Dr. Cochran.[1] When a claimant submits new evidence for the first time to the Appeals Council, the district court must determine whether, in light of the record as a whole including the evidence submitted for the first time to the Appeals Council, the Commissioner's decision is supported by substantial evidence. *Brewes v. Comm'r of Soc. Sec. Admin.*, 682 F.3d 1157, 1163 (9th Cir. 2012); *Lingenfelter v. Astrue*, 504 F.3d 1028, 1030 n. 2 (9th Cir. 2007); *Ramirez v. Shalala*, 8 F.3d 1449, 1452 (9th Cir. 1993).[2]

---

[1] Under current case law in this circuit, there does not appear to be a requirement for the claimant to show good cause for failing to present the evidence to the ALJ. *Brewes v. Comm'r of Soc. Sec. Admin.*, 682 F.3d 1157, 1163 (9th Cir. 2012). This might contribute to the unfortunate trend in social security appeals in which the claimant solicits additional medical evidence after receiving an adverse decision from the ALJ.

[2] The district court must consider the new evidence, even if the Appeals Council declined to review the ALJ's decision and made no findings based on the additional evidence. Paradoxically, while reviewing this evidence that was not the basis of any administrative findings, the district court must refrain from making independent findings and is constrained to review the evidence and reasoning given by the Commissioner as the basis for the decision. *Connett v. Barnhart*, 340 F.3d 871, 874 (9th Cir. 2003) *citing SEC v. Chenery Corp.*, 332 U.S. 194, 196 (1947).

3 - OPINION AND ORDER

## DISCUSSION

### I. Claims of Error

Beugli contends the post-decision psychological report from Dr. Cochran undermined the ALJ's determinations that Beugli's subjective statements were not entirely credible, that Beugli's impairments satisfied the severity requirement (step two), that Beugli failed to satisfy the criteria for presumptive disability under the Listing of Impairments (step three), that Beugli retained the RFC described previously, and that jobs which are not precluded by Beugli's RFC exist in the national economy (step 5).

### II. Credibility Determination

In his written application, Beugli alleged disability due to brain trauma and leg injuries sustained when he was hit by a car and from a long term learning disability. He said he had difficulty understanding and carrying out instructions and job tasks, poor reading and comprehension skills, and difficulty walking without a cane or walker. Admin. R. 196.

At the administrative hearing, Beugli testified that he last worked in 2008 as a wildland firefighter at the end of the firefighting season. Admin. R. 34. In August 2009, he was struck by a motor vehicle while walking, resulting in injuries to his head and right leg. Admin. R. 35. After the accident, Beugli used a cane, but he no longer needed it at the time of the hearing. Admin. R. 35. He testified that he could walk up to a mile before needing to sit and rest. After standing for 15 minutes, his leg would begin to hurt and he would have to change position. Admin. R. 36. He could lift up to 25 pounds. Admin. R. 37.

Beugli testified that he did not take any prescribed medications except medical marijuana, which calms down his attention deficit hyperactivity disorder ("ADHD") and helps with his anger;

he has smoked marijuana daily since age 14. Admin. R. 39. He has had no counseling or other mental health treatment. Admin. R. 40.

The ALJ accepted much of what Beugli said. For example, the ALJ found Beugli limited to light exertion in accordance with Beugli's testimony regarding his lifting ability. The ALJ accepted that Beugli had residual weakness in the right leg and accommodated it by restricting Beugli's RFC regarding exposure to hazards, climbing, and postural activities. Admin. R. 17-18. The ALJ also accepted that Beugli had mental impairments restricting him to simple, routine tasks without public contact. Admin. R. 18. The ALJ found Beugli was not fully credible, however, in claiming that he cannot engage in work activity within the limitations of his RFC assessment and that he cannot work at all. Admin. R. 18.

The ALJ found that the medical evidence supported impairments that could reasonably be expected to produce some of Beugli's alleged symptoms, and did not identify affirmative evidence of malingering. Admin. R. 18-22. Under such circumstances, an ALJ must assess the credibility of the claimant regarding the severity of symptoms. An adverse credibility determination must include specific findings supported by substantial evidence and clear and convincing reasons. *Carmickle v. Comm'r, Soc. Sec. Admin.*, 533 F.3d 1155, 1160 (9th Cir. 2008); *Smolen v. Chater*, 80 F.3d 1273, 1281-82 (9th Cir. 1996). The findings must be sufficiently specific to permit the reviewing court to conclude that the ALJ did not arbitrarily discredit the claimant's testimony. *Tomasetti v. Astrue*, 533 F.3d 1035, 1039 (9th Cir. 2008).

In assessing credibility, an ALJ must consider all the evidence in the case record, including the objective medical evidence, the claimant's treatment history, medical opinions, daily activities, work history, the observations of third parties with knowledge of the claimant's functional

limitations, and any other evidence that bears on the consistency and veracity of the claimant's statements. *Tommasetti*, 533 F3d at 1039; *Smolen*, 80 F3d at 1284; SSR 96-7p, 1996 WL 374186, at *5.

The ALJ's decision demonstrates that he considered all the evidence that was before him relating to proper factors for evaluating credibility. He discussed the medical evidence which showed that Beugli's leg injury went through a normal healing process for several months, after which he no longer required treatment or a cane. Admin. R. 19, 40, 355. Medical improvement from treatment supports an adverse inference as to the credibility of a claim of ongoing disability. *Morgan v. Comm'r of Soc. Sec.*, 169 F3d 595, 599 (9th Cir. 1999); *Tidwell v. Apfel,* 161 F.3d 599, 601 (9th Cir. 1998).

The ALJ considered Beugli's treatment history, which showed that he had no ongoing treatment, other than smoking marijuana daily. Admin. R. 19, 39. Treatment that is conservative or minimal supports an adverse inference as to the claimant's credibility regarding subjective claims of disabling symptoms. *Parra v. Astrue*, 481 F3d 742, 750-51 (9th Cir. 2007); *Meanal v. Apfel*, 172 F3d 1111, 1114 (9th Cir. 1999). Notably, Beugli said his medical marijuana was for ADHD and anger management, but he has no ADHD diagnosis and did not allege that anger affected his ability to work.

The ALJ considered the opinion evidence from examining and reviewing physicians. Admin. R. 19-21. In February 2010, Melissa Weimer, D.O., examined Beugli and found his right leg injury was well-healed with some mild residual weakness. Admin. R. 21, 349. Dr. Weimer opined that Beugli could stand and walk up to six hours and sit up to eight hours in a normal workday. She said Beugli could lift without restriction, but should limit climbing and postural activities and exposure

6 - OPINION AND ORDER

to hazards due to weakness in his right leg. Admin. R. 350. The ALJ's RFC assessment is consistent with Dr. Weimer's opinion, although somewhat more generous to Beugli because it limited him to work involving only light exertion. Admin. R. 17-18

Leslie Pitchford, Ph.D., performed a psychological evaluation. Dr. Pitchford noted that Beugli was under the influence of marijuana during the evaluation. She administered testing that supported borderline intellectual functioning, a cognitive disorder affecting visual perception, a learning disability in reading and writing, and marijuana abuse/dependence. Admin. R. 15, 294-95. She assessed Beugli's global functioning in the range indicating mild symptoms or mild difficulties in the broad categories of mental function. Admin. R. 15, 296. With respect to specific functional limitations, Dr. Pitchford said that his borderline intelligence and limitations in literacy and visuo-spatial processing would limit his work prospects to an unspecified degree. Admin. R. 15, 296.

Joshua Boyd, Psy.D., reviewed the entire record as of March 2010. Dr. Boyd opined that Beugli had multiple impairments that would limit his ability to work, including borderline intellectual functioning, cognitive disorder, learning disorder, and cannabis abuse. Admin. R. 20, 298, 305. He opined that these impairments would cause mild limitations in activities of daily living and social functioning and moderate limitations in maintaining concentration, persistence, or pace. Admin. R. 20, 307. Dr. Boyd opined that Beugli retained the ability to understand, remember, and carry out short instructions, but not detailed instructions, and could maintain concentration, persistence, and pace if limited to simple, repetitive tasks. He said Beugli could not frequently engage closely with the public. Admin. R. 313. The ALJ's RFC assessment is consistent with this opinion, although somewhat more generous to Beugli because it precluded work involving any public contact. Admin. R. 17-18.

7 - OPINION AND ORDER

After considering these opinions, the ALJ correctly found that none of the examining or reviewing physicians suggested greater functional limitations than those in the RFC assessment and none opined that Beugli was unable to work. Admin. R. 19-20. These opinions supported an adverse inference as to the credibility of Beugli's claim that he could not perform any kind of basic work.

The medical evidence and treatment records show that Beugli had two psychiatric episodes in 2011 that occurred after the examining and reviewing physicians gave their opinions. The ALJ considered these incidents but determined they were acute episodes related to substance abuse and medication interaction from which Beugli recovered fully and which have not recurred. Admin. R. 16. Beugli does not challenge that finding.

In assessing Beugli's credibility, the ALJ considered his work history. Beugli claimed disability from the date he last worked in August 2008, but conceded that he traces his disabling symptoms to injuries sustained when he was hit by a car one year later. Admin. R. 18, 35. Beugli testified that he stopped working because the firefighting season ended. Admin. R. 34, 42. When a claimant quits work for reasons unrelated to his alleged symptoms, the ALJ may draw an adverse inference as to the claimant's credibility. *Bruton v. Massanari*, 268 F.3d 824, 828 (9th Cir. 2001).

In reaching his credibility determination, the ALJ considered Beugli's reported daily activities. Admin. R. 19. Beugli is independent in his activities of daily living, including personal care, driving, running errands, cooking, helping with child care, walking the dog, mowing the lawn, and so forth. The ALJ reasonably concluded that Beugli's activities, while not equivalent to a full time job, are not as limited as would be expected based on the allegation of total disability. Admin. R. 19.

The ALJ's findings are supported by substantial evidence in the record and are sufficiently specific for me to conclude that the ALJ did not arbitrarily reject Beugli's subjective statements. His reasoning is clear and convincing. Accordingly, the ALJ's credibility determination was not erroneous. *Tommasetti*, 533 F.3d at 1039; *Carmickle*, 533 F.3d at 1160.

Beugli contends, however, that Dr. Cochran's post-decision report diminished the evidence supporting the ALJ's credibility determination so that it should be overturned. Dr. Cochran examined Beugli in March 2012. Admin. R. 403. His mental status findings were generally benign. Beugli reported lack of focus, difficulty managing complex ambiguous problems, and poor motivation. He had never required treatment or undergone counseling and continued to smoke marijuana on a daily basis. Admin. R. 406-07. On intelligence testing, Beugli scored in the borderline range. Admin. R. 408-09. Testing for cognitive function did not show deficits in concentration, attention, language comprehension or skills, short term memory, or memory for information presented visually or verbally. He had no problems with calculations, similarities, concept formation, or social judgment. Admin. R. 409-10.

Dr. Cochran administered the test for memory malingering ("TOMM"). It did not suggest that Beugli was malingering. At the same time, it did not support even mild deficits in verbal memory. Admin. R. 410. On personality testing, Beugli's profile was consistent with chronic hypochondriasis and typical of patients with anxiety, dysthymia, and somatoform disorders in which they convert emotional stress into physical symptoms. Admin. R. 410. On testing for emotional functioning, Beugli's profile showed a moderate tendency to exaggerate current problems. He scored in a pattern typical of people who are passive, dependent, lack initiative, and avoid conflict. Admin. R. 411-12. Dr. Cochran diagnosed cannabis dependence, alcohol abuse in reported

9 - OPINION AND ORDER

remission, somataform disorder, axniety disorder, dysthymic disorder, passive dependent personality, and borderline intellect. Admin. R. 412

Beugli contends that the ALJ's credibility determination was faulty because it did not account for Dr. Cochran's conclusion (1) that Beugli's TOMM scores did not suggest he was malingering, and (2) that Beugli met the diagnostic criteria for a somatoform disorder. Beugli's TOMM scores do not undermine the ALJ's credibility determination because the ALJ did not base his adverse credibility determination on a finding that Beugli was malingering. Beugli's personality and emotional functioning profiles added support for the ALJ's credibility finding by suggesting that Beugli's anxiety and dysthymia manifested as chronic hypochondriasis and a moderate tendency to exaggerate.

Similarly, Dr. Cochran's somatoform diagnosis does not undermine the ALJ's credibility determination. Beugli correctly asserts that somatoform disorders involve the conversion of emotional stress into physical complaints. Here, the ALJ did not discount Beugli's subjective testimony regarding his physical complaints. Indeed, the ALJ's RFC assessment incorporates the physical limitations Beugli claimed. Therefore, Dr. Cochran's finding that Beugli's physical complaints might have a psychological basis does not alter the credibility analysis.

Considering the record as a whole, including the evidence submitted for the first time to the Appeals Council, the ALJ"s credibility finding remains supported for the reasons given in the ALJ's decision, including the medical evidence, treatment history, the opinions of examining and reviewing physicians, Beugli's work history, and his daily activities. *Tommasetti*, 533 F3d at 1039; *Smolen*, 80 F3d at 1284.

## II.   Step Two Severity Requirement

At step two of the decision making process, the ALJ must determine whether the claimant has produced evidence of any combination of medically determinable impairments that has more than a minimal impact on his ability to perform work-related activities. This is a *de minimis* severity requirement, and if the claimant cannot make the required showing, the ALJ must find him "not disabled" without completing the remaining steps of the sequential process. 20 C.F.R. §§ 404.1520(c), 416.920(c); SSR 85-28.

Here, the ALJ resolved step two in Beugli's favor. That is, the ALJ found that Beugli had impairments that satisfied the *de minimis* severity requirement. He then continued the disability determination process until he reached a conclusion at step five. Admin. R. 14-16. Because the ALJ resolved step two in favor of Beugli, any error in that determination was not harmful. *See Burch v. Barnhart*, 400 F.3d 676, 682 (9th Cir. 2005) (Any error in omitting impairment at step two was harmless

where step two was resolved in claimant's favor); *Lewis v. Astrue*, 498 F.3d 909, 911 (9th Cir. 2007) (failure to list impairment at step two was harmless where all functional impairments were discussed in the decision). The ALJ discussed every functional impairment for which there was evidence in the record at the time of his decision.

Beugli relies on Dr. Cochran's post-decision diagnoses of somatoform disorder, anxiety disorder, dysthymia, and passive and dependent personality. However, these diagnoses were not supported by the evidence in the record at the time of the ALJ's decision, including Dr. Pitchford's psychological evaluation and Dr. Boyd's review of the evidence. It is reasonable to infer that these

11 - OPINION AND ORDER

conditions were early onset at the time of Dr. Cochran's evaluation and had not manifested at the time of the ALJ's decision. Accordingly, Dr. Cochran's opinion does not establish that the new impairments he diagnosed persisted long enough to satisfy the 12-month duration requirement. 20 C.F.R. §§ 404.1509, 416.909.

Even if that were not the case, and these undiagnosed conditions existed at the time of the ALJ's decision, they did not impose functional limitations beyond those the ALJ found. This is because Dr. Boyd and Dr. Weimer reviewed all the evidence of actual functional impairment and the ALJ accommodated the limitations shown. Accordingly, even if the prevailing diagnostic impression was incorrect at the time of the ALJ's decision, any functional limitations from undiagnosed somatoform disorder, anxiety disorder and so forth were accounted for.

Considering the record as a whole, including the evidence submitted for the first time to the Appeals Council, the ALJ"s step two finding remains supported by substantial evidence and any error is harmless because the ALJ resolved step two in Beugli's favor. *Burch*, 400 F.3d at 682.

### III. Step Three Listing of Impairments

The Commissioner acknowledges that certain conditions are so severe as to preclude substantial gainful activity. If the medical evidence establishes that a claimant suffers from such a condition, the claimant will be presumed to be disabled without further inquiry. *Tackett v. Apfel*, 180 F.3d 1094, 1099 (9th Cir. 1999); 20 C.F.R. §§ 404.1524(d)(1), 416.924(d)(1). Each presumptively disabling condition is known as a listing, and the criteria for each listing are enumerated at 20 C.F.R. Part 404, Subpart P, Appendix 1 ("Listing of Impairments").

For mental impairments, each listed condition includes a set of diagnostic medical findings in paragraph A and a set of impairment-related functional limitations in paragraph B. An individual

12 - OPINION AND ORDER

meets the criteria of a listed impairment when the criteria of both paragraphs A and B are satisfied. Listing of Impairments § 12.00(A). To satisfy the paragraph B criteria, the claimant must show two of the following: marked restriction of activities of daily living, marked difficulties in maintaining social functioning, marked difficulties in concentration, persistence, or pace, or repeated episodes of decompensation, each of extended duration. Listing of Impairments § 12.00(C).

The ALJ considered all the evidence that was before him at the time of his decision and determined that it showed Beugli had mild restrictions in activities of daily living, mild difficulties in maintaining social functioning, moderate difficulties in concentration, persistence, or pace, and no evidence of extended episodes of decompensation. Admin. R. 17. This determination was consistent with the opinions of the examining and reviewing psychologists, Beugli's reported activities, and the testimony of Beugli and his wife.

Beugli argues that Dr. Cochran's report diminishes the evidence supporting the ALJ's conclusion. This argument suffers from the same weaknesses as Beugli's previous arguments, *viz.*, Dr. Cochran's diagnoses were not supported by the evidence in the record before the ALJ, are contrary to the findings of the examining and reviewing physicians, and do not establish that they persisted for 12 months. Moreover, Dr. Cochran did not offer an opinion regarding the paragraph B criteria. The paragraph B criteria for the mental conditions Dr. Cochran diagnosed are identical to those for the mental conditions the ALJ considered in his decision. 20 C.F.R. §§ 12.02 - 12.09. At the time of the ALJ's decision, Beugli had mild restrictions in activities of daily living, mild difficulties in maintaining social functioning, moderate difficulties in concentration, persistence, or pace, and no evidence of extended episodes of decompensation. Admin. R. 17.

Considering the record as a whole, including the evidence submitted for the first time to the Appeals Council, the Commissioner's step three finding remains supported by substantial evidence. Beugli failed to show that, at the time of the ALJ's decision, his mental health resulted in functional impairments sufficient to satisfy the paragraph B criteria for any condition in the Listing of Impairments.

## IV.    RFC Assessment

Beugli asserts the same argument to challenge the ALJ's RFC assessment. With regard to limitations in mental work activities, the ALJ's RFC assessment limited Beugli to work involving only simple, routine tasks that do not require contact with the public. Admin. R. 18. This is entirely consistent with the record before the ALJ, and accurately reflects the functional limitations found by Dr. Boyd. Admin. R. 313.

Beugli's argues that the ALJ's RFC assessment is not consistent with the post-decision evidence from Dr. Cochran. Dr. Cochran's report included a Functional Assessment worksheet similar in format to the standard Mental Residual Functional Capacity ("MRFC") form used by agency reviewing physicians such as Dr. Boyd to assess a claimant's degree of impairment in 20 work-related mental activities. Dr. Cochran's worksheet is somewhat less useful than the MRFC, however, because it utilizes rating terms and definitions that do not appear on the MRFC form or in the regulations. In addition, unlike Dr. Boyd, who provided a narrative functional capacity assessment explaining his summary conclusions on the MRFC form, Dr. Cochran did not provide an explanation. Admin. R. 311-13, 401-02.

In any event, the limitations Dr. Cochran indicated on his worksheet and report appear to be reasonably accommodated by the limitations in the ALJ's RFC assessment. Dr. Cochran indicated

14 - OPINION AND ORDER

that Beugli's greatest areas of functional limitation were in working with detailed instructions and in interactions with supervisors. Admin. R. 401-02. The ALJ's RFC assessment reasonably minimizes the need for detailed instructions and supervision by restricting Beugli to simple, routine work. Admin. R. 18. Dr. Cochran suggested that Beugli's personality traits might cause him to be anxious around strangers. Admin. R. 411. The ALJ's RFC assessment accommodates limitations from these personality traits by eliminating work involving contact with the public. Admin. R. 18. In short, the ALJ's RFC assessment reasonably accommodates the limitations indicated in Dr. Cochran's report.

Considering the record as a whole, including the evidence submitted for the first time to the Appeals Council, the ALJ's RFC assessment remains supported by substantial evidence.

## V. Step Five Vocational Evidence

At step five, the Commissioner must show that work exists in the national economy that is not precluded by the claimant's RFC. *Andrews v. Shalala*, 53 F.3d at 1043. The Commissioner can satisfy this burden by eliciting the testimony of a vocational expert with a hypothetical question that sets forth all the limitations of the claimant. The assumptions in the hypothetical question must be supported by substantial evidence. *Andrews*, 53 F.3d at 1043.

Beugli contends the VE's testimony is not supported by substantial evidence because the ALJ's hypothetical assumptions did not reflect the limitations in Dr. Cochran's post-decision report. The ALJ's hypothetical question accurately reflected his assessment of Beugli's RFC, and, as discussed previously, the RFC assessment reasonably accommodated Dr. Cochran's findings. Admin. R. 17-18, 70. Accordingly, considering the record as a whole, including the post-decision evidence from Dr. Cochran, the ALJ's step five conclusion that jobs exist in the national economy

that are not precluded by the limitations in Beugli's RFC assessment, remains supported by the VE's testimony.

## **CONCLUSION**

For the foregoing reasons, the Commissioner's final decision is AFFIRMED.

DATED this \_\_1st\_\_ day of October, 2013.

                                                Robert E. Jones, Senior Judge
                                                United States District Court